```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
 --------------------------------X
 DAVID EHRICH and CAMILLE WEISS,

         Plaintiffs,                    MEMORANDUM AND ORDER

      -against-                         Civil Action No.
                                        CV-09-726(DGT)
 I.C. SYSTEM, INC.,

         Defendant.

 --------------------------------X
```

Trager, J:

Plaintiffs David Ehrich ("Ehrich") and Camille Weiss ("Weiss") (collectively "plaintiffs") bring this putative class action against defendant I.C. System, Inc. ("defendant"), alleging that defendant's debt collection letter violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, defendant's motion for summary judgment is denied, and it is determined that, as a matter of law, defendant's debt collection letter violated the FDCPA.

**Background**

**(1)**

The material facts are not in dispute. On or about April

21, 2008 and November 26, 2008, plaintiffs received identical debt collection letters from defendant. Plaintiffs do not dispute the validity of the debt sought to be collected by defendant nor do they contend that the main text of the collection letter fails to comply with the FDCPA. Rather, at issue is a single Spanish sentence contained in the "Notice" section towards the bottom of the letter. This section states:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor. <u>Si ud tiene alguna pregunta acerca de esta cuenta llame 800/279-9420 y referir al numero de su cuenta.</u>[1] Telephone calls to or from our General Office are randomly monitored by supervisory personnel for business reasons not directly related to your account. Calls may be recorded for quality assurance.
> Def.'s Ex. A. (emphasis added)

Plaintiffs claim that defendant's debt collection letter violated their right to notice under the FDCPA. Pl.'s Compl. at ¶ 22. Specifically, plaintiffs, who speak English,[2] argue that the phone number contained in the Spanish sentence overshadowed

---

[1] Plaintiffs translate this as, "If you have some questions regarding your account call 800/270-9420 and refer to your account number." Pl.'s Compl. at ¶ 24.

[2] It is not clear if plaintiffs also speak Spanish. Transcript of Oral Argument at 5.

2

the English notice because it encouraged Spanish-speaking consumers to call, thereby waiving their rights to notice.

On or about February 20, 2009, plaintiffs commenced the present action against defendant, seeking class certification, recovery of statutory damages and the costs of this action.

**Discussion**

**(1)**

**The FDCPA**

Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Under the FDCPA, a debt collection letter must include a written validation notice, containing information such as: the amount of the debt; the name of the creditor; and a statement that the consumer has 30 days to dispute the debt and to request debt verification. 15 U.S.C. § 1692g(a).[3] The

---

[3] Section 1692g(a) provides in pertinent part:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing:
>
> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt...the

omission of any of this information constitutes a violation of the FDCPA.  DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir. 2001).  However, even if the required information is contained in the letter, it must be "clearly conveyed" in order to comply with the FDCPA.  Russell v. Equifax A.R.S. and C.B.I. Collections, 74 F.3d 30, 35 (2d Cir. 1996).  Additionally, a debt collector is prohibited from "us[ing]...any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e(10).

In evaluating claimed FDCPA violations, courts apply an objective standard, "measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector."  Russell, 74 F.3d at 34.  The least sophisticated consumer standard focuses on the hypothetical consumer who lacks "the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer."  Id.  However, although the goal of this standard is to protect "the

---

    debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt...is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
15 U.S.C. § 1692g.

naive and credulous" from abusive debt collection practices, "courts have carefully preserved the concept of reasonableness." Clomon v. Jackson, 988 F. 2d 1314, 1319 (2d Cir. 1993). Notably, the objectivity of the least sophisticated consumer standard not only ensures consumer protection but also protects debt collectors against liability for unusual and peculiar interpretations of collection notices. Id. at 1320; see also Schweizer v. Trans Union Corp., 136 F.3d 233, 237 (2d Cir. 1998) (quoting Rosa v. Gaynor,784 F.Supp 1, 3 (D. Conn. 1989)) ("The FDCPA doesn't extend to every bizarre or idiosyncratic interpretation by a debtor of a creditor's notice.").

The least sophisticated consumer standard may be applied as a matter of law and thus is applicable in reviewing motions for summary judgment. Id. at 1318-19. Finally, because the FDCPA is a strict liability statute, a consumer need not show intentional conduct by the debt collector to be entitled to damages. Russell, 74 F.3d at 33. A debt collector who violates the FDCPA is liable for actual damages, plus costs and reasonable attorney's fees, as well as statutory damages determined by the district court.[4] 15 U.S.C. § 1692k(a).

---

[4] In an action brought by an individual, the court has discretion to award up to $1,000 in additional damages. 15 U.S.C. § 1692k(a)(2)(a). In a class action suit, the court has discretion to award up to $500,000 or 1% of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(b).

**(2)**

**Standing**

Defendant does not argue that plaintiffs lack standing, but the issue must be addressed as a threshold matter. See Robey v. Shapiro, Marianos & Cejda, L.L.C., 434 F.3d 1208, 1211 (10th Cir. 2006)(citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96-97 n.2 (1998)) ("Because constitutional standing is necessary to the court's jurisdiction, as a general rule it must be addressed before proceeding to the merits."). To meet the requirements for constitutional standing, a party must show, among other factors,[5] that he or she has suffered an "injury in fact." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Plaintiffs, however, seem to have no such injury here: they are English-speakers, not Spanish-speakers, and were therefore not affected by the Spanish sentence contained in the debt collection letter. Indeed, it is somewhat anomalous that plaintiffs who do not claim to speak Spanish would have constitutional standing in this case.

Yet, plaintiffs do in fact have standing because the FDCPA broadens the traditional "injury in fact" analysis by expanding the range and scope of injuries that create constitutional

---

[5] A plaintiff must also demonstrate that the injury is fairly traceable to the challenged action of defendant and that it is redressable. Lujan, 504 U.S. at 560-61.

6

standing.[6]  Robey, 434 F.3d at 1212.  Specifically, the FDCPA allows a plaintiff to recover statutory damages despite the absence of actual damages; in other words, the "injury in fact" analysis is directly linked to the question of whether plaintiff has suffered a cognizable statutory injury and not whether a plaintiff has suffered actual damages.  15 U.S.C. § 1692k(a)(2)(a); see also supra n.4.  Courts have consistently interpreted the FDCPA to confer standing on plaintiffs who have suffered no actual harm, allowing them to sue for statutory violations.  See Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 96 (2d Cir. 2008) ("[T]he FDCPA permits and encourages parties who have suffered no loss to bring civil actions for statutory violations."); Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 307(2d Cir. 2003)("[C]ourts have held that actual damages are not required for standing under the FDCPA.").

Indeed, the FDCPA is designed to protect consumers from the unscrupulous behavior of debt collectors, with the focus on a debt collector's misconduct, and not on whether a plaintiff can demonstrate actual damages.  Id. at 307-08 (holding that because there was debtor misconduct involving unlawful fees, plaintiff suffered an injury even though he did not actually pay any of

---

[6] As the Supreme Court has explained, Congress has the power to "enact statutes creating legal rights, the invasion of which creates [constitutional] standing, even though no injury would exist without the statute."  Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3.

7

these unlawful fees); see also Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998) ("We must focus on the debt collector's misconduct, not whether the debt is valid or...whether the consumer has paid an invalid debt."). Furthermore, a plaintiff's subjective reaction to a debt collection letter is irrelevant to a determination of standing. See Jacobson,, 516 F.3d at 96 (holding that plaintiff had standing to sue under the FDCPA even though he admitted that he did not feel threatened or misled by the debt collection letter demanding payment). Thus, here, although plaintiffs themselves were not deprived of notice by the Spanish sentence, their mere receipt of a debt collection letter that potentially violated the FDCPA is sufficient to establish standing.

Granting standing to plaintiffs in this particular case also facilitates an important goal of the FDCPA. Notably, the FDCPA "enlists the efforts of sophisticated consumers...as 'private attorney generals' to aid their less sophisticated counterparts, who are unlikely to bring suit." Id. As such, plaintiffs have standing.

**(3)**

**Plaintiffs' claims under the FDCPA**

**a. § 1692g**

Under § 1692g of the FDCPA, "any...communication...may not overshadow...the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."  A communication is overshadowing when "it conveys...information in a confusing or contradictory fashion so as to cloud the required message with uncertainty," Desantis, 269 F.3d at 161, and leaves "the least sophisticated consumer uncertain as to her rights." Russell, 74 F.3d at 35.  Plaintiffs argue that defendant violated § 1692g by inserting a Spanish sentence containing a telephone number into its debt collection letter, thereby overshadowing the English notice that was properly provided.  Defendant, on the other hand, claims that the Spanish sentence did not overshadow the required notifications and that the phone number merely provided a method for consumers to call with questions.

Before addressing whether the Spanish sentence is actually overshadowing, it is first necessary to determine whether Spanish-speaking consumers fall into the objective category of the least sophisticated consumer and are thus entitled to FDCPA protection.  Defendant argues that the protection provided under

9

the FDCPA does not cover consumers who understand Spanish better than English because they do not represent the objective consumer.  Defendant points to the fact that the FDCPA's protection does not extend to every possible interpretation of a debt collection letter, and therefore, a Spanish-speaking consumer's subjective understanding would not qualify for FDCPA protection.

However, as is indicated by the high percentage of Spanish speakers in the United States and New York, Spanish speakers cannot be characterized as a non-mainstream population. According to a census conducted by the United States Census Bureau in 2008, 12.2% of Americans and 14.2% of New York residents speak Spanish in their homes.  <u>See</u> U.S. Census Bureau, http://www.census.gov (last visited Jan. 19, 2010).  Indeed, defendant's inclusion of the Spanish sentence indicates an awareness that a high number of consumers are non-English speakers in need of a Spanish translation.  While "the FDCPA doesn't extend to every bizarre or idiosyncratic interpretation" of a debt collection letter, a Spanish-speaking consumer's interpretation would not qualify as such.  <u>Schweizer</u>, 136 F.3d at 237 (quoting <u>Rosa</u>,784 F.Supp at 3).  Therefore, defendant's argument that Spanish-speaking consumers do not represent the objective, least sophisticated consumer is incorrect.

10

However, the question still remains whether the inclusion of the Spanish sentence containing a phone number actually overshadowed the notice that was properly provided; specifically, did the sentence "make the least sophisticated consumer uncertain as to her rights[?]" Russell, 74 F.3d at 35. Although there are no prior cases with facts similar to the instant case, courts have held that a phone number in a collection letter does not necessarily overshadow the validation notice. See, e.g., Lerner v. Forster, 240 F. Supp. 2d 233, 238 (E.D.N.Y. 2003) ("It does not follow that simply because a collection letter instructs a consumer to contact a debt collector that the validation notice is necessarily overshadowed or contradicted.") Specifically, when a debt collection letter unambiguously provides the required FDCPA notice and merely supplements it with a phone number, there is no § 1692g violation. See, e.g., Miller, 321 F.3d at 310 ("Where a validation notice plainly specifies that FDCPA contact must be in writing...a reasonable consumer ... could [not] be misled into thinking that the clear obligation to request validation in writing was somehow modified by ... the invitation to call.").

Although a phone number does not violate the FDCPA when it merely supplements proper notice, courts have distinguished between a phone number "that...simply encourages the debtor to

communicate with the debt collection agency" and one that "threaten[s] or encourage[s] the...debtor to waive his statutory right to challenge the validity of the debt." Terran v. Kaplan, 109 F.3d 1428, 1434 (9th Cir. 1997). For example, in Shapiro v. Dun & Bradstreet Receivable Mgmt. Servs., Inc., the debt collection letter stated:

> If there are any questions regarding this account...please contact [the creditor] directly at [telephone #]. Should you wish to dispute this account, please refer to the notice on the reverse side of this letter.

209 F. Supp. 2d 330, 333 (S.D.N.Y. 2002).

The Shapiro court held that the inclusion of a phone number did not overshadow the notice because "there [was] no suggestion as to which course the plaintiff should follow," and the consumer was not left uncertain as to his rights. Id. at 333-34. Similarly, in Lerner, the collection letter stated, "You may either pay the balance in full or contact... [telephone #] and work out an arrangement for payment." Lerner, 240 F. Supp. 2d at 235. The Lerner court held that this phone number did not overshadow the notice because the letter clearly laid out the debtor's options- i.e., either to resolve the debt or dispute it- thus leaving no ambiguity as to the debtor's rights. Id. at 238-39.

Additionally, courts have also held that a debt collection

letter may include "a convenience," something (like a phone number) that subtly encourages a consumer to make a payment on a debt, as long as the notice is also plainly stated. See, e.g., Day v. Allied Interstate, Inc., 09-CV-0495, 2009 WL 1139474, at *1 (E.D.N.Y. Apr. 27, 2009) (holding that a perforated payment stub at the top of a debt collection letter was merely "a convenience" for a debtor who wanted to settle a debt and therefore did not overshadow the notice); Tipping-Lishie v. Riddle and Riddle & Assocs., No. 99-CV-4646, 2000 WL 33963916, at *4 (E.D.N.Y. March 2, 2000) ("[T]here is certainly nothing in the statute prohibiting a debt collector from also furnishing debt verification when requested to do by way of a telephone call.") (emphasis added). As long as no emphasis is placed on the phone number in any way and "the text...is uniformly presented in ordinary, same size font," then the phone number is not overshadowing. Terran, 109 F.3d at 1434.

However, the instant case presents a unique set of facts and is distinguishable from the cases described above. Unlike these prior cases where notice was plainly stated, the FDCPA notice here was ambiguous to Spanish-speaking consumers. Although the notice was provided in English, from the perspective of Spanish-speaking consumers, it was not plainly stated if they were unable to understand the English. Instead, the letter left the Spanish-

speaker uncertain as to his or her rights, failing to clearly state the available options.  The phone number was much more than merely supplementary to the notice because notice in Spanish was essentially never provided.  Quite the contrary, the inclusion of the phone number encouraged the Spanish-speaking consumer to call and potentially waive his or her rights to challenge the validity of the debt.  The sentence gave Spanish-speakers the misimpression that they understood the appropriate steps to take if they had questions, when in fact, their rights were not explained to them.

Additionally, the Spanish sentence created a particular emphasis on the phone number, thereby overshadowing the rest of the letter.  Cf. Terran, 109 F.3d at 1434 (holding that there was no overshadowing because "[t]he text of the letter [was] uniformly presented....[and] [n]o emphasis [was] placed on any particular statement").  Specifically, to the Spanish-speaking consumer with no ability to understand English, this sentence stood out, because it was the only sentence he or she could easily understand.  Even a Spanish-speaking consumer with a basic proficiency in English might be inclined to focus on the Spanish sentence over the English text.  Thus, although the Spanish sentence was in the same font and size as the rest of the letter, it nonetheless destroyed the overall uniform presentation of the

14

letter because the eyes of the Spanish-speaking consumer could gravitate to the Spanish text.  See id.

Finally, although the required notice was provided here (albeit in English), defendant's technical compliance with the FDCPA was not sufficient to meet the statutory requirements.  As described above, in passing the FDCPA, Congress sought to protect debtors from abusive debt collection practices and "intended that...notice be clearly conveyed."  Russell,74 F.3d at 35 (emphasis added).  A debt collector cannot use "cunning ways to circumvent § 1692g," abiding by the letter of the law while simultaneously violating the spirit behind the law.  Id. ("[P]urported compliance with the form of the statute should not be given sanction at the expense of the substance of the Act."). The inclusion of the Spanish sentence indicates defendant's awareness that the recipients of the debt collection letter included Spanish-speaking consumers who did not speak English (and perhaps even indicates that Spanish-speaking consumers were actually being targeted by defendant).  Given that defendant deemed it necessary to include the Spanish sentence, the English notice was clearly not sufficient to inform these Spanish-speaking consumers of their rights.  Thus, even though defendant technically complied with the FDCPA by providing the notice in English, this was still not enough to meet the FDCPA

15

requirements, and protection is, nonetheless, needed here to prevent abusive debt collection practices that specifically target non-English speaking consumers. See Chuway v. Nat'l Action Fin. Servs. Inc., 362 F.3d 944, 948 (7th Cir. 2004)("[I]f [the debt collection letter] would confuse a significant fraction of the persons to whom it is directed...the defendant will be liable.").

It is important to note that it remains unclear what actually occurred when a debtor called the phone number at issue here. Indeed, it may very well be that defendant treated a phone call in the same manner as a written request from a consumer for debt verification. Regardless, under the FDCPA, the debt collector must send the consumer "a <u>written</u> notice" containing the information described in § 1692g(a) so that no rights are waived unintentionally. Moreover, in order for the consumer to gain his or her rights to verification, the request for debt verification must be made in writing rather than over the phone. 15 U.S.C. § 1692g(b). A phone call, therefore, does not suffice to meet the requirement of written notice, regardless of what occurs when the consumer calls the phone number. As such, the Spanish sentence violated § 1692g because it overshadowed the notice.[7]

---

[7] Defendant argues that applying the doctrine of overshadowing to the Spanish sentence stretches § 1692g "beyond

**b. § 1692e**

Plaintiffs also argue that the Spanish sentence violated § 1692e of the FDCPA. Under § 1692e, "a debt collector may not use any false, deceptive, or misleading representation or means

---

reason and rationality" and will "open the floodgates of litigation." Def.'s Supplemental Mem. of Law in Supp. of Mot. for Summ. J. at 3. As an example, defendant suggests that if the Spanish sentence is determined to be overshadowing, then a phone number in a debt collection letter to an illiterate consumer would also qualify as overshadowing. Specifically, defendant presents the following hypothetical of an illiterate consumer:

> The [illiterate] debtor would potentially see a phone number on the collection letter, and instead of having the letter (and required notifications) read to him, the debtor may call the collector without having understood the required notifications . . . .[T]he phone numbers invite those who do not read but understand numbers to call without receiving the required notifications. Would the FDCPA then require collectors to send audio recordings of the validation notices in case the debtor cannot read?
> Id. at 4.

However, a situation involving an illiterate consumer is different from the instant case. As stated above, "courts have carefully preserved the concept of reasonableness" when determining FDCPA violations. Clomon, 988 F.2d at 1319; see also Chuway, 362 F.3d at 948("It is impossible to draft a letter that is certain to be understood by every person who receives it."). The effect of applying overshadowing to defendant's illiterate consumer hypothetical would be an unreasonable one: it would completely restrict debt collectors from including phone numbers (or for that matter, maybe any numbers at all) even when notice is otherwise plainly stated. On the other hand, it is quite reasonable to restrict debt collectors from including a single Spanish sentence containing a phone number. Instead, they could either not include any Spanish at all, or alternatively, they could provide the entire notice in Spanish in addition to the English.

in connection with the collection of any debt."  Often referred to as the "Mini-Miranda," § 1692e requires a debt collector to disclose that the communication is from a debt collector and that any information obtained will be used for the purpose of collecting the debt.  15 U.S.C. § 1692e(11); Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 650 (S.D.N.Y. 2006)("FDCPA § 1692e(11), which requires a debt collector to disclose that a communication is from a debt collector, [is] often referred to as the Mini-Miranda.").

Plaintiffs claim that by including the Spanish sentence, defendant effectively solicited a phone call without disclosing that the communication was from a debt collector, as is required under the FDCPA's Mini-Miranda.  Plaintiffs argue that absent the Spanish sentence, a Spanish-speaking consumer would have the letter translated instead of calling the listed phone number, thus receiving the required FDCPA notice.  Defendants, however, argue that the Spanish statement merely provides a phone number for debtors to call with questions and would not cause a consumer to waive his or her statutory right to notice.[8]

For the same reasons set forth above regarding defendant's violation of § 1692g, defendant's debt collection letter also

---

[8] We, of course, were not provided with a dialogue of the phone call.

18

violates § 1692e.  As suggested by plaintiffs, by including the Spanish sentence, defendant might deceive or mislead the least sophisticated Spanish-speaking consumer into calling the phone number, thereby potentially waiving his or her rights.  As such, the debt collection letter also violates § 1692e.

## Conclusion

For the reasons set forth above, the Court finds as a matter of law that defendant's debt collection letter violated the FDCPA.  As such, defendant's motion for summary judgment is denied.  The parties are directed to contact Judge Go's chambers to conclude any remaining discovery.

Dated:     Brooklyn, New York
           January 20, 2010

                                        SO ORDERED:


                                        _____/s/_____
                                        David G. Trager
                                        United States District Judge